**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

CLARA M. BAISDEN,
    Appellant,

  v.

DEPARTMENT OF DEFENSE,
    Agency.

DOCKET NUMBER
CH-0432-19-0219-I-1

DATE: April 4, 2024

# THIS ORDER IS NONPRECEDENTIAL[1]

William J. O'Malley, Esquire, Columbus, Ohio, for the appellant.

C. Michael Meehan, Esquire, Christine Roark, Esquire,
 and Jeffrey Csokmay, Esquire, Columbus, Ohio, for the agency.

**BEFORE**

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman

**REMAND ORDER**

The appellant has filed a petition for review of the initial decision, which sustained her performance-based removal. For the reasons discussed below, we GRANT the appellant's petition for review, VACATE the initial decision, and REMAND the case to the regional office for further adjudication consistent with

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

*Santos v. National Aeronautics and Space Administration*, 990 F.3d 1355 (Fed. Cir. 2021).

## BACKGROUND

The Department of Defense (DOD) Defense Logistics Agency (DLA) appointed the appellant to the position of Contract Specialist, Basic Contract Administrator, in November 2017. Initial Appeal File (IAF), Tab 33 at 4. She came to the agency with more than a decade of Federal contracting experience and two Defense Acquisition Workforce Improvement Act (DAWIA) certifications. IAF, Tab 31 at 4, 13-16.

In May 2018, approximately 6 months into her time with the agency, the appellant's supervisor denied her request for telework, warning that her performance was unacceptable. IAF, Tab 14 at 96-97. He indicated that the appellant would be given an evaluation period, but a performance improvement plan (PIP) would follow if her performance did not improve. *Id*. at 96.

In July 2018, the agency issued the appellant a written counseling, indicating that her performance had not yet improved. *Id*. at 72-76. The counseling letter recounted five performance standards or elements, the appellant's deficiencies in each, and how she must improve. *Id*.

In August 2018, approximately 9 months into her time with the agency, the agency placed the appellant on a 90-day PIP. *Id*. at 64-71. The PIP relied on the same five performance standards discussed in the counseling letter, again providing a description of successful performance, the appellant's deficiencies, and what the appellant needed to do to improve. *Id*.

In December 2018, the agency concluded that the appellant failed the PIP. *Id*. at 40-44. Consequently, the agency proposed the appellant's removal for unacceptable performance, once again relying on the same five performance standards or critical elements: processing post award requests (PARs), completing contractor performance assessment ratings system (CPARS)

assessments, exercising contract options, timely and accurately completing contract annual reviews, and timely and accurately completing delivery order sourcing. *Id*. at 31-38. After the appellant responded, *id*. at 25-30, the deciding official issued a decision to sustain the removal action, *id*. at 21-24.

The appellant timely filed the instant appeal to challenge the agency's removal action. IAF, Tab 1. She raised affirmative defenses of race discrimination, age discrimination, equal employment opportunity (EEO) reprisal, and reprisal for filing a complaint with the agency's Office of Inspector General (OIG). *Id*. at 3.

The administrative judge developed the record and held the requested hearing before affirming the appellant's removal. *E.g.*, IAF, Tab 39, Hearing Recording, Day 1, Tab 41, Hearing Recording, Day 2, Tab 42, Initial Decision (ID). She found that the agency met its burden of proving the appellant's unacceptable performance, ID at 4-20, and the appellant failed to prove her affirmative defenses, ID at 20-26. The appellant has filed a petition for review. Petition for Review (PFR) File, Tab 1. The agency has filed a response. PFR File, Tab 3.

## ANALYSIS

Remand is required in light of *Santos*.

At the time the initial decision was issued, the Board's case law stated that, to prevail in an appeal of a performance-based action under chapter 43, an agency must establish by substantial evidence that: (1) the Office of Personnel Management approved its performance appraisal system; (2) the agency communicated to the appellant the performance standards and critical elements of her position; (3) the appellant's performance standards are valid under 5 U.S.C. § 4302(c)(1); (4) the agency warned the appellant of the inadequacies of her performance during the appraisal period and gave her a reasonable opportunity to improve; and (5) the appellant's performance remained unacceptable in at least

one critical element. *White v. Department of Veterans Affairs*, 120 M.S.P.R. 405, ¶ 5 (2013). Substantial evidence is "[t]he degree of relevant evidence that a reasonable person, considering the record as a whole, might accept as adequate to support a conclusion, even though other reasonable persons might disagree." 5 C.F.R. § 1201.4(p). Substantial evidence is a lesser standard of proof than preponderance of the evidence and, to meet this standard, the agency's evidence need not be more persuasive than that of the appellant. *Towne v. Department of the Air Force*, 120 M.S.P.R. 239, ¶ 6 (2013). The administrative judge found that the agency proved these elements. ID at 4-20.

On review, the appellant argues that the agency failed to prove some, but not all, of the aforementioned elements. PFR File, Tab 1 at 5-22. We will address those elements that she has specifically challenged, along with one additional element that is not described above and was not addressed during the proceedings below.

*The agency communicated its performance standards.*

An agency is required to communicate to its employees the performance standards and critical elements of their positions. 5 U.S.C. § 4302(c)(2). Such communication may occur through written instructions, information concerning deficiencies and methods of improving performance, memoranda describing unacceptable performance, responses to the employee's questions concerning performance, or in any manner calculated to apprise the employee of the requirements against which he is to be measured. *Chaggaris v. General Services Administration*, 49 M.S.P.R. 249, 254 (1991).

The administrative judge found that the agency proved this element of its burden because the agency informed the appellant of her performance standards on at least three occasions: when she was hired, when her supervisor changed, in or around April 2018, and before the start of her PIP, in or around August 2018. ID at 7. On review, the appellant acknowledges that agency officials provided her with the applicable standards on multiple occasions before her PIP, including

once reading them aloud. PFR File, Tab 1 at 6. She nevertheless argues that the agency never truly communicated these standards because there was no "social contract" or "mutual understanding of how the standards would be met." *Id*. at 5-7. Yet she fails to identify anything about the agency's communications that left her unsure of what the agency expected in terms of performance, and we do not find those performance standards particularly complicated.

To illustrate, the performance standard for completing CPARS assessments simply required that the appellant "submit[] draft CPAR assessments to [s]upervisor . . . in CPAR system within 35 calendar days of the end of the contract performance period." IAF, Tab 14 at 61, 66-67, 73-74. It further describes performance that would be deemed unacceptable, such as not meeting expectations for quality of work and missing targeted deadlines. *Id*. at 61. Given the numerous occasions in which the agency provided this information to the appellant, along with additional information regarding observed deficiencies, we are unpersuaded by the appellant's assertion that those standards were never truly communicated.

*The agency provided a reasonable opportunity to improve.*

The employee's right to a reasonable opportunity to improve is a substantive right and a necessary prerequisite to all chapter 43 actions. *Lee v. Environmental Protection Agency*, 115 M.S.P.R. 533, ¶ 32 (2010). In determining whether an agency met its obligation of affording an employee a reasonable opportunity to demonstrate acceptable performance, relevant factors include the nature of the duties and responsibilities of the employee's position, the performance deficiencies involved, and the amount of time given to the employee to demonstrate acceptable performance. *Id*. Notably, an agency is not required to provide an employee with any formal training as part of the reasonable opportunity to improve period. *Corbett v. Department of the Air Force*, 59 M.S.P.R. 288, 290 (1993).

On review, the appellant reasserts that the agency failed to give her adequate training.[2] PFR File, Tab 1 at 7-12. Among other things, she argues that the agency provided minimal training, which was generally informal and haphazard. *Id*. The administrative judge discussed this at length, in terms of training the agency provided before the PIP, training the agency provided during the PIP, and training the agency denied for reasons ranging from its expectations due to the appellant's prior experience and the appellant's backlog of work. ID at 7-12. She concluded that, despite arguments to the contrary, the agency proved that it gave the appellant a reasonable opportunity to improve. ID at 12. We discern no basis for disturbing the administrative judge's conclusions.

It is evident that the agency overestimated the appellant's abilities and experience, initially, but it then took remedial action by increasing the appellant's training. *E.g.*, IAF, Tab 14 at 40, 65, 70, 76-87, Tab 19 at 108-10, Tab 20 at 97-99. Most notably, the agency assigned the appellant a trainer in January 2018, and he retained that role for most of the calendar year, including the PIP period that ended in November 2018. *E.g.*, IAF, Tab 20 at 97-99. Throughout that time, this trainer provided extensive instruction on various aspects of the appellant's job. *Id*. By his own explanation, the trainer taught the appellant "every activity that is necessary for the successful performance of her job as a [Basic Contract Administrator], each activity multiple times." *Id*. at 97.

Specific to the PIP period, the administrative judge recognized that the appellant's supervisor and her trainer were available throughout for assistance and feedback, with the exception of a period in which the trainer was absent. ID at 11-12. On that point, the appellant argues that she avoided seeking assistance from her supervisor during the PIP because she worried that the supervisor would

[2] Relatedly, the appellant further argues that the agency should not have placed her on the review period that preceded her PIP. PFR File, Tab 1 at 12-14. She asserts, for example, that it was too soon in her time with the agency to identify performance deficiencies and too soon after she received a new supervisor. *Id*. To the extent that it is relevant, the appellant may present this argument during the remand proceedings. *See infra* p. 10.

have used her requests for assistance to support the eventual removal action. PFR File, Tab 1 at 15. However, the appellant's failure to avail herself of the assistance offered was at her own peril. *See Goodwin v. Department of the Air Force*, 75 M.S.P.R. 204, 208-09 (1997) (an agency afforded the appellant a reasonable opportunity to improve where it gave her a detailed PIP letter and written feedback during the PIP, and her supervisor made herself available to provide assistance, but the appellant did not request further assistance).

*The appellant's performance remained unacceptable.*

Failure to demonstrate acceptable performance under a single critical element will support a removal in a chapter 43 action such as this. *Towne*, 120 M.S.P.R. 239, ¶ 29 n.12. Nevertheless, the administrative judge addressed all of the critical elements underlying the appellant's removal, finding that the agency proved each by substantial evidence. ID at 12-20. On review, the appellant also presents arguments for them all: processing post award requests, PFR File, Tab 1 at 16-17, completing CPARS assessments, *id*. at 18-19, exercising contract options, *id*. at 19-20, completing annual reviews, *id*. at 20-21, and completing delivery order sourcing, *id*. at 21-22. For the sake of brevity, we will only address a couple.

We will first consider the critical element mentioned above, completing CPARS assessments. *Supra* p. 5. Again, to be fully successful, the appellant's performance plan required that she submit draft CPARS assessments to her supervisor in the CPAR system within 35 days of the end of the contract performance period. *E.g.*, IAF, Tab 14 at 61, 66, 73. The performance plan further provided that her performance would be deemed unacceptable if, among other things, she failed to meet expectations for quality of work or missed targeted deadlines. *Id*. at 61.

The agency alleged that the appellant's performance remained unacceptable in this critical element because she had three CPARS assessments due during the PIP period, but two were turned in late and all three were of low quality,

requiring numerous corrections. *Id*. at 32, 46-48. The administrative judge relied on documentary evidence and hearing testimony to find that the agency proved the appellant's unacceptable performance in this element. ID at 14-15.

On review, the appellant reasserts that one of the late CPARS assessments, Breton-0192, was not her responsibility because another individual—the Contracting Officer—took over the assignment during her absence. PFR File, Tab 1 at 18.[3] We are not persuaded. The only evidence the appellant directed us to on review is not supportive. *See Weaver v. Department of the Navy*, 2 M.S.P.R. 129, 133 (1980) (before the Board will undertake a complete review of the record, the petitioning party must explain why the challenged factual determination is incorrect, and identify the specific evidence in the record which demonstrates the error). Instead, the cited evidence indicates that the Breton-0192 CPARS assessment was due on September 22, 2018, but the appellant missed that deadline. IAF, Tab 14 at 47-48. Although the Contracting Officer eventually took over the assignment, the evidence the appellant pointed us to suggests that he did not do so until weeks after the appellant's missed deadline. *Id*.

For the other CPARS assessment that the agency deemed untimely, Evans-0085, the appellant argues that documented comments from the Contracting Officer "clearly indicates it was completed." PFR File, Tab 1 at 18. Yet the only evidence to which the appellant has referred reflects nothing of the sort. *Id*.; IAF, Tab 14 at 47. Instead, that evidence consists of comments, dated a week after the Evans-0085 due date, indicating that the assignment "still needs more work." IAF, Tab 14 at 47. Other evidence, including bi-weekly feedback notes from when the Evans-0085 CPARS assessment was due, specifically

---

[3] In making this argument, the appellant cites "Tab 41, p.48" and "Tab 41, p. 47 of 340." PFR File, Tab 1 at 18. This appears to be a typographical error, where the appellant inverted the numerals of the tab number. Pages 47 and 48 of tab 14 discuss the matter at hand, while tab 41 is an electronic recording of hearing testimony without page numbers. *Compare* IAF, Tab 14 at 47-48, *with* IAF, Tab 41.

describe the appellant as having missed the October 23, 2018 deadline for submission. *Id*. at 48, 336. Under these circumstances, we need not address the appellant's other argument about her CPARS assessments, regarding their quality. PFR File, Tab 1 at 18-19. Because the appellant failed to complete two of her three CPARS assessments within the designated timeline for doing so, as required by the applicable performance standard, it is apparent that the appellant exhibited unacceptable performance in this critical element.

We will next discuss one other critical element: completing delivery order sourcing. To be fully successful, this element required that the appellant accurately source delivery orders within an average of 5-7 calendar days of their receipt. *E.g*., IAF, Tab 14 at 63, 69, 75.

The agency alleged that the appellant's performance during the PIP period remained unacceptable in this element because she was untimely for at least 17 out of 21 orders, with the majority taking the appellant more than 2 weeks.[4] *Id*. at 33-34, 43-44, 54-57. The administrative judge relied upon the agency's documentation, hearing testimony, and the appellant's admissions to find that the agency proved this unacceptable performance. ID at 19.

On review, the appellant argues that the agency's numbers "were fabricated." PFR File, Tab 1 at 21. She asserts that she timely completed "most all" of the associated tasks for this critical element. *Id*. The appellant further explained that these tasks were time consuming and it was inevitable that many would be untimely. *Id*. at 21-22. However, she has once again failed to direct us to any persuasive evidence that warrants us disturbing the administrative judge's conclusion. Instead, the appellant has merely referred to her own testimony,

---

[4] We recognize that the agency's documentation contains a numerical discrepancy. Although the PIP summary and the proposal to remove the appellant describe the appellant as failing 20 out of 24 tasks in this critical element during the PIP, IAF, Tab 14 at 33-34, 43, an attached breakdown with the specific tasks assigned and their status shows that the appellant failed 17 out of 21 tasks during the PIP, *id*. at 54-56. The administrative judge relied on the latter, more detailed description, and we will as well. ID at 19.

along with her response to the proposed removal, where she summarily stated that the agency's numbers were not accurate and her untimeliness on some tasks was unavoidable. *Id*.; IAF, Tab 14 at 29-30. Such conclusory assertions do not persuade us that the administrative judge erred in crediting the agency's detailed evidence of the appellant's unacceptable performance in this critical element. *E.g.*, IAF, Tab 14 at 54-56, 338.

> *On remand, the agency must justify its PIP.*

Although the appellant has identified no basis for us to disturb the administrative judge's findings regarding the agency proving the elements described above, we must remand this appeal for the agency to prove one additional element. During the pendency of the petition for review in this case, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) held in *Santos*, 990 F.3d at 1360-61, that in addition to the five elements of the agency's case set forth above, the agency must also justify the institution of a PIP by proving by substantial evidence that the employee's performance was unacceptable prior to the PIP. The Federal Circuit's decision in *Santos* applies to all pending cases, including this one, regardless of when the events took place. *Lee v. Department of Veterans Affairs*, 2022 MSPB 11, ¶ 16. Accordingly, we remand the appeal to give the parties the opportunity to present argument and additional evidence on whether the appellant's performance during the period leading up to the PIP was unacceptable in one or more critical elements. *See id*, ¶¶ 15-17. On remand, the administrative judge shall accept argument and evidence on this issue, and shall hold a supplemental hearing if appropriate. *Id*.,¶ 17.

The appellant failed to prove her claims of discrimination and EEO reprisal.

The administrative judge found that the appellant failed to meet her burden of proof for claims of race discrimination, age discrimination, and EEO reprisal. ID at 21-24. In reaching that conclusion, she considered whether any of those prohibited considerations—race, age, or EEO activity—was a motivating factor in

the appellant's removal. ID at 20-21 (citing *Savage v. Department of the Army*, 122 M.S.P.R. 612, ¶¶ 36-37, 41 (2015), *overruled in part by Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶¶ 23-25).

Specific to the appellant's discrimination claims, the administrative judge found that the appellant's alleged comparator, a younger white individual hired around the same time as the appellant, was not similarly situated because of their vast differences in experience. ID at 21-22. She explained that the appellant had many years of Federal contracting experience, along with 2 relevant certifications, but the comparator had neither. *Id*.; *see Hooper v. Department of the Interior*, 120 M.S.P.R. 658, ¶ 6 (2014) (for employees to be deemed similarly situated for purposes of an affirmative defense of discrimination based on disparate treatment, all relevant aspects of the appellant's employment situation must be "nearly identical" to those of the comparator employee).

On review, the appellant effectively concedes that her comparator was not similarly situated because of their differences in experience. PFR File, Tab 1 at 22-23. She nevertheless refers to this individual while arguing that the agency should have provided her with more training in the period leading up to her removal, and asserting that its failure to do so must have been motivated by the appellant's race and age. *Id*. We are not persuaded. Although the appellant has speculated that race and age were motivating factors in the agency's training decisions and her eventual removal, she has failed to direct us to any evidence of record in support of the same.

The appellant's EEO reprisal claim fares no better. The administrative judge recognized that while the proposing and deciding officials became aware of the appellant's EEO activity before both the PIP and the resulting removal, the associated performance deficiencies began before the appellant's EEO activity, as did the agency's efforts to remedy them. ID at 24. In the absence of anything other than officials' knowledge of the EEO activity, the administrative judge found that the appellant failed to prove that her EEO activity was a motivating

factor in the removal action. *Id*. She later credited testimony from the proposing and deciding officials, who indicated that their decisions were exclusively motivated by the appellant's performance. ID at 26. According to the administrative judge, their testimony was direct, without hesitation, and consistent with the extensive documentary record. *Id*.

On review, the appellant merely notes that it is unlikely a management official would ever admit to retaliation. PFR File, Tab 1 at 23-24. That does not, however, persuade us to reach a different conclusion than the administrative judge regarding witness credibility or the appellant's claim of EEO reprisal. *See Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002) (explaining that the Board must give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so).[5]

The appellant's claim of retaliation for engaging in OIG activity is unavailing.

On review, the appellant alludes to her claim of reprisal for engaging in protected OIG activity, but only to again assert that it was unlikely that the proposing and deciding officials would admit to retaliation. PFR File, Tab 1 at 23-24. Although that assertion is not persuasive, we must recognize the proper standard for this affirmative defense.

Under the Whistleblower Protection Enhancement Act of 2012 (WPEA), an appellant may raise an affirmative defense of whistleblower reprisal based on protected activity under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), and (D). *Alarid v. Department of the Army*, 122 M.S.P.R. 600, ¶ 12 (2015). Relevant to this appeal, section 2302(b)(9)(C) prohibits retaliation for "cooperating with or disclosing

---

[5] Because we affirm the administrative judge's finding that the appellant failed to show that any prohibited consideration was a motivating factor in the agency's action, we need not resolve the issue of whether the appellant proved that discrimination or retaliation was a "but-for" cause of the agency's decisions. *See Pridgen*, 2022 MSPB 31, ¶¶ 20-22, 29-33.

information to the Inspector General . . . of an agency." 5 U.S.C. § 2302(b)(9)(C).

To prevail on a claim such as this, an appellant must first demonstrate by preponderant evidence that she engaged in protected activity. *Alarid*, 122 M.S.P.R. 600, ¶ 13. Next, she must establish that the protected activity was a contributing factor in the challenged personnel action. *Id*. One way of proving that an appellant's prior protected activity was a contributing factor in a personnel action is the "knowledge/timing" test. *Id*. Under this test, an appellant can establish that her prior protected activity was a contributing factor in the challenged action by showing that the deciding official knew of the protected activity and took the personnel action within a period of time such that a reasonable person could conclude that the protected activity was a contributing factor in the action. *Id*.

If the appellant makes both of these showings by preponderant evidence, the burden shifts to the agency to prove by clear and convincing evidence that it would have taken the same action in the absence of the appellant's protected activity. *Id*., ¶ 14. In determining whether the agency has met this burden, the Board will consider all the relevant factors, including the following: (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials involved in the decision; and (3) any evidence that the agency takes similar actions against employees who did not engage in such protected activity, but who are otherwise similarly situated. *Id*. (citing *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999)). The Board does not view these factors as discrete elements, each of which the agency must prove by clear and convincing evidence, but rather weighs these factors together to determine whether the evidence is clear and convincing as a whole. *Id*. In assessing whether the agency has met its burden by clear and convincing evidence, the Board must consider all the

pertinent evidence in the record, and it must not exclude or ignore countervailing evidence by only looking at the evidence that supports the agency's position. *Id.*

With her initial pleading, the appellant alleged that her removal was motivated by a complaint she filed with the agency's OIG in October 2018, during the middle of her PIP. IAF, Tab 1 at 3. The administrative judge responded by informing the appellant of the aforementioned framework for analyzing that claim. IAF, Tab 3 at 1, 10. Both parties responded accordingly. *E.g.*, IAF, Tab 6 at 9-11, Tab 19 at 10-12. Yet the administrative judge recited and applied a different standard in the initial decision. ID at 25 (citing, *e.g., Warren v. Department of the Army*, 804 F.2d 654, 656-58 (Fed. Cir. 1986)). In this regard, the administrative judge erred. *See Elder v. Department of the Air Force*, 124 M.S.P.R. 12, ¶ 39 (2016) (finding that an administrative judge erroneously applied the *Warren* standard to a claim of reprisal for activity protected by section 2302(b)(9)(A)(i), and modifying the initial decision to instead apply the burden-shifting framework of 5 U.S.C. § 1221(e)). Consequently, we will apply the correct standard—the standard the appellant received notice of below. *Compare Wynn v. U.S. Postal Service*, 115 M.S.P.R. 146, ¶ 12 (2010) (remanding an appeal because the administrative judge altogether failed to provide an appellant with notice of the burdens and elements of proof for his affirmative defenses), *overruled on other grounds by Thurman v. U.S. Postal Service*, 2022 MSPB 21, *with Mahaffey v. Department of Agriculture*, 105 M.S.P.R. 347, ¶ 11 (2007) (finding that remand was unnecessary to address an appellant's affirmative defense because the agency's submissions put the appellant on notice of the correct burden and elements of proof below).

The agency does not dispute that the appellant filed a complaint with its OIG on or around October 8, 2018, and that activity is protected under section 2302(b)(9)(C). IAF, Tab 6 at 19, Tab 19 at 10, 14. It is also evident that the proposing and deciding officials knew of the appellant's protected activity prior to her February 2019 removal, as reflected by their sworn statements to the

OIG investigator and the OIG investigator's final report, which indicates that she interviewed each. IAF, Tab 19 at 14-15, Tab 20 at 85-90. Under these circumstances, we find that the appellant satisfied the knowledge/timing test and met her burden of proving that her activity protected under section 2302(b)(9)(C) was a contributing factor in her removal. Consequently, the burden shifts to the agency. *Supra* pp. 13-14.

For the first *Carr* factor, we find that the agency's evidence in support of its personnel action was quite strong. Among other things, the agency highlighted the appellant's performance deficiencies and warned of possible repercussions in the May 2018 denial of her telework request, the July 2018 counseling letter, and the August 2018 PIP letter. IAF, Tab 14 at 64-75, 96-97. Subsequent documentation, dated after the start of the PIP, but still before the appellant's OIG complaint, shows that her performance deficiencies persisted. *E.g., id*. at 285, 288-89, 294-96, 300-03, 323. For example, a September 2018 PIP feedback report shows that the appellant continued to miss deadlines, such as the Breton-0192 CPARS assessment we discussed above. *Id*. at 300-03; *supra* p.8. Documentation dated after the appellant's OIG complaint reflects more of the same; she continually failed to meet the agency's performance standards across numerous critical elements. *E.g., id*. at 31-38, 40-44, 315, 317-19, 336-38. Although the appellant has consistently disputed the agency's allegations of unacceptable performance, blaming a lack of training and indicating that the agency's allegations were altogether fabricated, she has presented little more than bare assertions. *E.g., id*. at 25-30. We conclude that the agency presented very strong evidence regarding the appellant's unacceptable performance during the PIP, which was the basis for her removal.

Turning to the second *Carr* factor, the underlying complaint accused management of improprieties ranging from a failure to provide her with adequate training to demeaning comments. *E.g*., IAF, Tab 19 at 14-31. In part, her allegations were directed at "management staff," and reflect poorly on numerous

officials in and around her chain of command regarding their capacity as managers and employees. *E.g., id*. at 24; *see Chavez v. Department of Veterans Affairs*, 120 M.S.P.R. 285, ¶ 33 (2013). More importantly, many of her allegations directly implicated the proposing official, with some also implicating the deciding official to a lesser extent. IAF, Tab 19 at 24-29. The OIG investigator deemed the appellant's allegations "unfounded," while also describing her "toxic work environment" as one that "she had created for herself." *Id*. at 14. The associated report is dated a month before the deciding official removed the appellant, but it is not apparent to us whether this report was disseminated to relevant parties during that span of time. *Compare* IAF, Tab 14 at 21 (removal decision), *with* IAF, Tab 19 at 14 (OIG report). Either way, the proposing and deciding officials had a notable motive to retaliate.

For the third *Carr* factor, we were unable to locate any arguments or evidence from the agency that it takes similar actions against employees who did not engage in such protected activity, but who are otherwise similarly situated. *E.g.,* IAF, Tab 19 at 11-12. Accordingly, we find that the third *Carr* factor, if anything, "tends to cut slightly against the [agency]." *Miller v. Department of Justice*, 842 F.3d 1252, 1262 (Fed. Cir. 2016).

We are cognizant of the requirement that we consider all of the pertinent evidence, including evidence that fairly detracts from our ultimate conclusion. *Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012). Nevertheless, we find that the agency met its burden of proving, by clear and convincing evidence, that it would have taken the same personnel action—removal—in the absence of the appellant's protected activity. Simply put, it is apparent that the agency was preparing for the appellant's possible removal for unacceptable performance across numerous critical elements before she engaged in the activity protected under section 2302(b)(9)(C). Her subsequent removal, after the protected activity, was the natural consequence of continued

performance deficiencies that had, by that time, persisted for many months, despite various warnings and interventions.

Conclusion

In conclusion, the arguments the appellant presented on review are unavailing. We must nevertheless remand this appeal in light of *Santos*. On remand, the administrative judge shall accept argument and evidence on this issue, and shall hold a supplemental hearing if appropriate. *Lee*, 2022 MSPB 11, ¶ 17. The administrative judge shall then issue a new initial decision consistent with *Santos*. *See id*. If the agency makes the additional showing required under *Santos* on remand, the administrative judge may incorporate her prior findings in the remand initial decision concerning the other elements of the agency's case and her prior findings on race discrimination, age discrimination, and EEO reprisal. *See id*. The administrative judge may also incorporate our findings concerning reprisal for filing a complaint with the agency's OIG in the remand initial decision. However, regardless of whether the agency meets its burden, if the argument or evidence on remand regarding the appellant's pre-PIP performance affects the appellant's affirmative defenses, the administrative judge should address such argument or evidence in the remand initial decision. *See Spithaler v. Office of Personnel Management*, 1 M.S.P.R. 587, 589 (1980) (explaining that an initial decision must identify all material issues of fact and law, summarize the evidence, resolve issues of credibility, and include the administrative judge's conclusions of law and his legal reasoning, as well as the authorities on which that reasoning rests).

## ORDER

For the reasons discussed above, we remand this case to the regional office for further adjudication in accordance with this Remand Order.

FOR THE BOARD:

*Gina K. Grippando*

_____
Gina K. Grippando
Clerk of the Board

Washington, D.C.